UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DR. MARTIN HINZ and
NEURORESEARCH CLINICS, INC.,

   Plaintiffs,

v.

NEUROSCIENCE, INC. and
GOTTFRIED KELLERMANN,

   Defendants.

Case No. 04-CV-0142 (PJS/RLE)

ORDER

---

  Aaron W. Davis and Brian L. Stender, PATTERSON THUENTE SKAAR & CHRISTENSEN, PA, for plaintiffs.

  Henry M. Helgen, III, Amanda R. Cefalu, and Carl S. Wosmek, MCGRANN SHEA ANDERSON CARNIVAL STRAUGHN & LAMB, CHTD, for defendants.

  On October 10, 2006, a jury found defendants Neuroscience, Inc. and Gottfried Kellermann (collectively "Kellermann") liable to plaintiffs Dr. Martin Hinz and Neuroresearch Clinics, Inc. (collectively "Hinz") on Hinz's claim for breach of contract. The jury awarded Hinz $1,989,373.00 in damages, and the Court entered judgment on the jury's verdict.

  This matter is before the Court on six post-trial motions: (1) Kellermann's motion for judgment as a matter of law or, in the alternative, a new trial; (2) Kellermann's motion for a stay of judgment; (3) Kellermann's motion for an extension of time to file a notice of appeal; (4) Hinz's motion for a permanent injunction, and for pre- and post-judgment interest; (5) Kellermann's motion for a stay of any permanent injunction granted pursuant to Hinz's

motion; and (6) Hinz's motion for attorney's fees and costs.[1]  For the reasons set forth below, the Court grants Kellermann's motion for judgment as a matter of law with respect to damages and denies it in every other respect.  The Court also denies Hinz's motions for a permanent injunction and for attorney's fees and costs.  The remaining motions are denied as moot.

*A. Kellermann's Motion for Judgment as a Matter of Law or a New Trial*

1. Sufficiency under Fed. R. Civ. P. 7(b)

Both Rule 50(b) (governing post-trial motions for judgment as a matter of law) and Rule 59(a) (governing motions for a new trial) require that these motions be filed no later than ten days after the entry of judgment.  Kellermann filed Rule 50(b) and Rule 59(a) motions on the tenth day after judgment, but those motions did not describe the grounds on which they were based.  The basis of the motions was described in a supporting memorandum, but that supporting memorandum was not filed until the next day — after the ten-day deadline had passed.  *See* Docket No. 411 (motion filed Oct. 25, 2006); Docket No. 425 (noting that Kellermann's conventionally filed memorandum was received in the clerk's office on Oct. 26, 2006).  Hinz argues that Kellermann's motions therefore failed to "state with particularity the grounds therefor" as required by Rule 7(b), and that this failing was not "cured" by the memorandum because the memorandum was filed after the ten-day deadline — a deadline that this Court has no power to extend.  See Fed. R. Civ. P. 6(b)(2).  Therefore, Hinz contends, Kellermann's motions must be dismissed under Rule 7(b).

---

[1]The Court also previously granted Kellermann's motion for an order requiring Hinz to show cause why he should not be held in contempt for violating the Court's October 2, 2006 injunction.  For the reasons stated at the February 20, 2007 hearing, the Court declines to impose any sanctions on Hinz for his one-time violation of the injunction.

Rule 7(b)'s particularity requirement does not apply to oral motions made during a hearing or trial, however. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1193 (3d ed. 2004) ("Rule 7(b)(1) specifically exempts oral motions made during a hearing or trial from the requirements of particularity[.]"). At the close of Hinz's case, Kellermann properly made an oral Rule 50(a) motion and specified the grounds for the motion in court as well as in a written submission. Trial Tr. vol. III, 478-490, Oct. 6, 2006; Docket No. 382. After the jury returned its verdict, Kellermann orally renewed his motion under Rule 50(b). Trial Tr. vol. V, 577, Oct. 10, 2006. The Court immediately informed Kellermann that it would "take [the motion] under advisement and expect you to brief it . . . as part of your post-trial motions." Thus, the motion now pending before the Court is the oral Rule 50(b) motion that Kellermann made immediately after the jury returned its verdict. As noted, the particularity requirement of Rule 7(b) did not apply to that oral motion.[2] *Cf. Meriwether v. Coughlin*, 879 F.2d 1037, 1041-42 (2d Cir. 1989) (holding that the following statement, made after the jury returned its verdict, was sufficient to comply with Rule 50(b): "I would, your Honor, like to at this time note that defendants wish to move for a judgment notwithstanding the verdict").

One might argue that exempting oral motions from Rule 7(b)'s particularity requirement would lead to the absurd result that a party could move for judgment as a matter of law without ever having to specify the grounds for its motion. But Rule 50(a)(2) requires that a 50(a) motion

---

[2]The fact that Kellermann later — and unnecessarily — reduced his Rule 50(b) motion to writing does not change this analysis. Obviously, by reducing his oral Rule 50(b) motion to writing, Kellermann did not *withdraw* the oral Rule 50(b) motion — a motion that the Court had under advisement.

"specify the judgment sought and the law and facts that entitle the movant to the judgment," without regard to whether the motion is oral or written. The reason for this particularity requirement is to give the nonmovant the opportunity to introduce evidence sufficient to cure the claimed defect before the case is submitted to the jury. *See Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 901 (8th Cir. 2006). A Rule 50(b) motion is, by definition, a renewal of a Rule 50(a) motion. Thus, Rule 50(a)(2) has the practical effect of ensuring that the opposing party and the court will be apprised of the basis for any kind of Rule 50 motion.

Even if this analysis is incorrect — that is, even if Rule 7(b)'s particularity requirement *did* apply to Kellermann's Rule 50(b) motion — it is clear under *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 794 (8th Cir. 2003), that the Court may look to Kellermann's *previous* filings to satisfy that requirement. Hinz argues that the written Rule 50(b) motion in *Andreas* was held to be sufficient only because the motion specifically alluded to one of the grounds raised in the Rule 50(a) motion. But the salient point of *Andreas* was the following holding:

> In the present case, the district court rightly looked to the Rule 50(a) pleadings. By definition, a Rule 50(b) motion is a renewal of a prior Rule 50(a) motion made at the close of the evidence and as such is limited to those issues raised in the previous motion.

*Id.* While *Andreas* pointed out that the written Rule 50(b) motion referred specifically to one of the four issues raised in the Rule 50(a) motion, it is not clear that *Andreas*'s holding *depended* on that fact. Indeed, the Eighth Circuit has previously held:

> Once a sufficient motion for judgment as a matter of law has been made, nothing in the law requires the movant continually to make arguments or to file written motions repeating the details of the original over and over again. We believe that it is sufficient for the movant . . . simply to renew the motion generically.

*Kline v. City of Kansas City, Fire Dep't*, 175 F.3d 660, 670 (8th Cir. 1999).

Hinz contends that *Kline* is distinguishable because it concerned the sufficiency of the moving party's Rule 50(a) motion made at the close of all the evidence, rather than the sufficiency of a renewed motion under Rule 50(b).[3] But, as *Andreas* explains, a Rule 50(b) motion is simply a renewal of a Rule 50(a) motion. If a Rule 50(a) motion can be "generically renewed" at the close of the evidence (as *Kline* held), then surely it can be "generically renewed" after the jury has returned its verdict.

The Eighth Circuit has emphasized that technical precision is not necessary under Rule 50 or Rule 7, so long as the court and the opposing party are aware of the grounds for the motion. *Andreas*, 336 F.3d at 793; *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321, 323 n.4 (8th Cir. 1997); *Cortez v. Life Ins. Co. of N. Am.*, 408 F.2d 500, 502-04 (8th Cir. 1969). Here, the issue of damages raised in Kellermann's late-filed memorandum was also raised in his Rule 50(a) motion and was extensively argued throughout trial. When Kellermann orally renewed his motion after the verdict — and when Kellermann later (and unnecessarily) reduced that pending motion to writing — neither the Court nor the parties could have had any doubt regarding the basis for the motion. The Court therefore finds that Kellermann's Rule 50(b) motion is properly before the Court.[4]

---

[3] Although *Kline* cites Rule 50(b), it appears that the court was discussing only whether the moving party had properly made a Rule 50(a) motion at the close of the evidence. *See Kline*, 175 F.3d at 670 (discussing the motions made at the close of the plaintiffs' evidence, at the close of the defendant's evidence, and at the close of all the evidence).

[4] Because the Court has found that Kellermann's Rule 50(b) motion is sufficient, Kellermann's motion for an extension of time to file a notice of appeal is moot. *See* Fed. R. App. P. 4(a)(4)(A)(i) (a timely-filed Rule 50(b) motion tolls the deadline to file a notice of appeal).

The same is not true, however, for Kellermann's Rule 59(a) motion for a new trial. Kellermann did not move for a new trial under Rule 59(a) until ten days after the judgment, the final day for filing such a motion. *See* Docket No. 411.  As noted, that motion did not describe the grounds on which it was based, and Kellermann did not file a supporting memorandum identifying those grounds until the next day — one day after the ten-day deadline. *See* Docket No. 425.  The Rule 59 motion is therefore insufficient under Rule 7(b), and the Court is without power to consider Kellermann's request for a new trial.[5]  *See* Fed. R. Civ. P. 6(b)(2); *Riley v. Nw. Bell Tel. Co.*, 1 F.3d 725, 727 (8th Cir. 1993).

Because Rule 50(b) expressly permits a party to jointly move under Rule 50(b) and Rule 59(a), Kellermann could argue that, to the extent that his Rule 59(a) motion presents the same issues as his Rule 50(b) motion, it is properly before the Court.  But a Rule 59(a) motion can be based on any number of grounds, many of which would not be evident in the record of the trial.  Simply invoking Rule 59 provides the Court with no basis on which to grant a new trial. The fact that Kellermann simultaneously moved for judgment as a matter of law under Rule 50(b) does not help him, because a Rule 59(a) motion is not equivalent to a Rule 50(b) motion.  The standards applicable to the two motions are quite different. *See White v. Pence*, 961 F.2d 776, 779-80 (8th Cir. 1992); 9A Charles Alan Wright & Arthur R. Miller, *Federal*

---

[5]Although Rule 50(b)(1)(B) grants the Court the discretion to order a new trial, that discretion exists for the benefit of the *nonmoving* party, so that it may remedy the lack of evidence that would otherwise require entry of judgment against it.  *See Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411, 414 (8th Cir. 1985).  In contrast, an alternative motion for a new trial under Rule 59(a) is for the benefit of the party moving for judgment under Rule 50(b).  In the event that the party is not entitled to judgment under Rule 50(b), it can ask, in the alternative, for a new trial under Rule 59(a).  *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 2538, 2539 (3d ed. 2004).

*Practice & Procedure* § 2531 (3d ed. 2004).  Indeed, courts carefully distinguish between the two motions:  A party who moves only for judgment as a matter of law under Rule 50(b) — and whose motion is denied — cannot be granted a new trial on the basis that the verdict is against the weight of the evidence.  *See Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411, 414-15 (8th Cir. 1985).  The Court therefore concludes that the reference to Rule 59 in Kellermann's only timely filing is not sufficient to bring his Rule 59 motion properly before the Court.  *See Riley*, 1 F.3d at 726-27.

## 2.  Standard of Review

Judgment as a matter of law is appropriate when a party has been fully heard on an issue and "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"  Fed. R. Civ. P. 50(a)(1).  In considering a motion for judgment as a matter of law, the Court must view the facts in a light most favorable to the nonmoving party and grant the nonmoving party the benefit of all reasonable inferences.  *See Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 899-900 (8th Cir. 2006).  The Court should not grant the motion unless the evidence is susceptible of no reasonable inference sustaining the position of the nonmoving party.  *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 863 (8th Cir. 2004).

## 3.  Damages

This case arose out of a previous lawsuit between the parties that ended in settlement.  The jury in this case found that the parties' settlement agreement, which they signed in September 2003, prohibited Kellermann from promoting, marketing, using, or selling any product that contains the ingredient mucuna pruriens.  *See* Docket No. 392.  During the trial,

Hinz argued that he was entitled to lost profits in the amount of $5.5 million, Cefalu Aff. Ex. L, Oct. 25, 2006, but the jury awarded him $1,989,373.00. Kellermann argues that the evidence was insufficient, as a matter of law, to support any award of damages.

Under Minnesota law, a plaintiff may recover damages for lost profits if the claimed damages are not remote, speculative, or conjectural. *See Cashman v. Allied Prods. Corp.*, 761 F.2d 1250, 1252 (8th Cir. 1985) (applying Minnesota law).[6] A plaintiff need not establish the amount of damages with absolute certainty. As long as the *fact* of damage is proven by a preponderance of the evidence, the difficulty of calculating the precise *amount* of damage will not preclude recovery if there is a reasonable basis on which to approximate that amount. *See Polaris Indus. v. Plastics, Inc.*, 299 N.W.2d 414, 419 (Minn. 1980); *accord Blaine Econ. Dev. Auth. v. Royal Elec. Co.*, 520 N.W.2d 473, 479 (Minn. Ct. App. 1994); *Cashman*, 761 F.2d at 1253; *LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 351 (8th Cir. 1981).

Ordinarily, to recover damages for lost profits, a plaintiff needs to offer evidence defining the market, demonstrating what his share of the market would have been but for the defendant's breach, and establishing the profit he would have earned on the increased sales. At trial, Hinz offered evidence that the market for the use of mucuna pruriens as a treatment for neurotransmitter dysfunction was essentially a two-seller market consisting of Hinz and Kellermann, who competed for the same specialized customer base — and, at least initially, for

---

[6]Both sides have applied Minnesota law to the issue of the sufficiency of the evidence on damages, and the Court will therefore do the same. *See Heatherly v. Alexander*, 421 F.3d 638, 641-42 (8th Cir. 2005) (applying state law on causation in analyzing a motion for judgment as a matter of law). *But see Finley v. River N. Records, Inc.*, 148 F.3d 913, 918 (8th Cir. 1998) (in a diversity case brought under state law, the standard for reviewing whether the evidence was sufficient to support the verdict is set by federal law).

some of the same customers.  To calculate his damages, Hinz offered evidence that the rate of his sales growth fell after Kellermann began breaching the settlement agreement (which, under Hinz's theory, happened immediately after the parties signed it).

Specifically, Hinz offered evidence that in the year preceding the parties' settlement agreement (August 2002 to September 2003), Hinz's sales grew by 88.2%.  Cefalu Aff. Ex. L, Oct. 25, 2006.  In contrast, in the three years after the parties entered into the settlement agreement (when Kellermann was continually in breach of it), Hinz's sales grew by only 28.4%, 10.5%, and 18.8%, respectively.  *Id.*  Because there is no other reason why Hinz's rate of growth would have dropped so substantially, Hinz argues, it is reasonable to assume that Kellermann's breach caused the drop.  Further, Hinz contends, in a two-seller market in which his competitor's sales were rapidly increasing, it is reasonable to infer that Hinz's sales would have increased by at least 88.2% per year if Kellermann had not breached the settlement agreement.  *See B&Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813, 816 (Minn. 1979) (holding that evidence that the plaintiff's growth rate declined while the overall industry grew at a steady pace would tend to prove that the defendant's breaches caused the plaintiff's decline).  Hinz argues that a reasonable approximation of his damages can be reached by applying his historical 43% royalty rate to the difference between his actual rate of growth (28.4%, 10.5%, or 18.8%) and his expected rate of growth (88.2%).

The Court has carefully considered the parties' arguments and, although the Court does not doubt that Hinz suffered *some* injury as a result of Kellermann's breach, and although the Court is loathe to overturn the verdict of any jury, the Court cannot help but conclude that Hinz's

evidence is too speculative to support an award of damages under Minnesota law. There are several problems with Hinz's evidence.

First, Hinz offered virtually no evidence about his and Kellermann's products, other than that all of the breaching products contain mucuna pruriens and all of them treat neurotransmitter dysfunction. But Hinz and Kellermann sell numerous products containing mucuna pruriens in combination with various other ingredients. These products are used to treat dozens of different conditions and are aimed at very different groups of consumers. Hinz testified that his products are effective in treating obesity, insomnia, pre-menstrual syndrome, depression, and restless leg syndrome, among other conditions. Hinz lumps together all products containing mucuna pruriens in order to compare his sales with Kellermann's sales, but Hinz offered no evidence explaining the difference between the products or why a customer would buy one over another.

Second, because Hinz made no effort to segment the market, he also made no effort to prove which segments of the market were growing and at what rates. There was also no evidence to indicate whether Hinz's sales growth came from new customers or increased sales to existing customers — an important point, since Hinz's chief piece of evidence that Kellermann's breach depressed Hinz's sales was that Kellermann initially marketed his products to Hinz's customers.

Third, Hinz's reliance on only one year's worth of sales growth as a benchmark — his assumption that, because during one year his sales grew by 88.2%, his sales would have continued to grow by 88.2% — is extremely problematic. Hinz offered no evidence whatsoever about whether this one-year increase in sales was aberrational or typical. Nor did Hinz offer any evidence, expert or otherwise, about overall sales growth in the industry — an "industry" that, it

should be noted, is small and in its infancy and thus presumably subject to wild fluctuations. The fact that Hinz's sales grew 88.2% in a single year gave the jury no basis for concluding whether, in the absence of competition from Kellermann, Hinz's sales in future years would have grown 8.2%, 88.2%, or 882.0%. The jury was left to speculate, and speculation cannot sustain an award of lost profits.

Hinz's use of the 88.2% sales-growth rate has another flaw. Again, Hinz's argument is that, because his sales increased 88.2% from August 2002 to September 2003 (when the settlement agreement with Kellermann was signed), they would have continued to increase by 88.2% if Kellermann had honored the settlement agreement and not sold products containing mucuna pruriens. According to Hinz, the fact that his sales-growth rate dropped from 88.2% in 2002-2003 (the year before the settlement agreement was signed) to 28.4% in 2003-2004 (the year after the settlement agreement was signed) was entirely due to the fact that Kellermann was selling products containing mucuna pruriens in violation of the settlement agreement.

The problem with this reasoning is that, during *both* the "benchmark" year (2002-2003) *and* the three "damages" years (2003-2006), Kellermann was selling products containing mucuna pruriens. Hinz and Kellermann originally planned to be in business together. After their relationship deteriorated, they each went their separate ways, but both continued to sell products containing mucuna pruriens. In September 2003, Hinz and Kellermann signed the settlement agreement, but, from the outset, Kellermann did not interpret the settlement agreement as restricting his ability to sell products containing mucuna pruriens. To this day, Kellermann has not stopped selling products containing mucuna pruriens.

Had Kellermann not been selling products containing mucuna pruriens before the settlement agreement was signed, and then begun selling the products after the settlement agreement was signed, then it would make sense to attribute the drop in Hinz's sales-growth rate to Kellermann. Something would have changed, and that "something" would most likely have been Kellermann. But that's not what happened. Before the settlement agreement was signed, both Hinz and Kellermann were selling products containing mucuna pruriens. After the settlement agreement was signed, both Hinz and Kellermann continued to sell products containing mucuna pruriens. The "something" that changed from the year before the settlement agreement was signed (when Hinz's sales-growth rate was 88.2%) to the year after the settlement agreement was signed (when Hinz's sales-growth rate was 28.4%) was obviously not Kellermann. Hinz's sales must have dropped for some other reason — a reason not even hinted at, much less quantified, by the evidence presented at trial.

This is not to deny that Kellermann's continued presence in the market cost Hinz some sales. Without question, Hinz would have sold more products containing mucuna pruriens had he been able to sell in a one-seller market, instead of competing against Kellermann in a two-seller market. But the jury had no basis whatsoever for figuring out *how many* more products Hinz would have sold. Hinz's theory — that *all* of the drop in his sales-growth rate from 88.2% to 28.4% (and then to 10.5% and 18.8%) was caused by Kellermann's continued presence in the market — simply makes no sense.

With only a rudimentary outline of the relevant market, one year's worth of sales growth at a particular rate, and no evidence that Kellermann's breach actually altered the competitive conditions of the market, Hinz has provided no reasonable basis for the calculation of his

damages. Kellermann's motion for judgment as a matter of law is therefore granted with respect to the issue of damages. In light of the Court's disposition of this motion, Kellermann's motion for stay of judgment and Hinz's motion for pre- and post-judgment interest are both denied as moot.

### 4. Interpretation of the Settlement Agreement

The remainder of Kellermann's motion is based on his argument that there is insufficient evidence to support Hinz's interpretation of the settlement agreement. Kellermann did not properly preserve this argument, because he failed to make it as part of his Rule 50(a) motion. *See Andreas*, 336 F.3d at 794. Instead, Kellermann's Rule 50(a) argument was that the Court erred in finding that the settlement agreement was ambiguous and therefore erred in permitting the jury to consider parol evidence. *See* Trial Tr. vol. III, 488-89, Oct. 6, 2006. This is not the same as arguing that the parol evidence was insufficient to support the jury's verdict as to liability. Kellermann's motion on the issue of the meaning of the settlement agreement is therefore denied.

To the extent that Kellermann's motion rests on his properly preserved argument — that the Court erred in permitting the jury to consider parol evidence — the motion is denied for the reasons stated at the February 20, 2007 hearing. The Court continues to believe that the settlement agreement was ambiguous, that parol evidence was admissible on the question of its meaning, and that the jury's verdict regarding the meaning of the agreement was supported by the evidence.

5. Federal Rule of Civil Procedure 50(c)

When a court grants a Rule 50(b) motion, it must also rule in the alternative on a motion for a new trial, if one was brought.  *See* Fed. R. Civ. P. 50(c).  As explained above, Kellermann's Rule 59(a) motion is not properly before the Court, and the Court therefore need not rule on it under Rule 50(c).

### B.  *Hinz's Motion for a Permanent Injunction*

Hinz moves for an injunction permanently prohibiting Kellermann from promoting, marketing, using, or selling any product containing mucuna pruriens.  In this diversity action, the Court applies Minnesota law to determine whether a permanent injunction is appropriate.  *See Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir. 2003); 19 Charles Alan Wright et al., *Federal Practice & Procedure* § 4513 (2d ed. 1996).

In Minnesota, a party seeking an injunction must establish that it has no adequate legal remedy and that an injunction is necessary to prevent great and irreparable harm.  *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 92 (Minn. 1979); *Jackel v. Brower*, 668 N.W.2d 685, 688 (Minn. Ct. App. 2003).  In this case, although Hinz offered sufficient proof that Kellermann breached the settlement agreement, Hinz has failed to provide a reasonable basis for calculating his damages.  This failure also precludes the Court from granting Hinz's requested equitable relief.

To be irreparable, the harm must be of such a nature that money alone cannot remedy it.  *See Morse v. City of Waterville*, 458 N.W.2d 728, 729-30 (Minn. Ct. App. 1990).  The only injury Hinz has identified in this action is lost profits, which are obviously compensable with

money damages. Hinz has not shown that he has suffered, or will suffer, any other type of injury. The Court is therefore unable to say that any harm Hinz may be suffering is irreparable.

This case is not like a typical non-compete or trade-secret case in which, absent specific performance, the plaintiff's business is likely to suffer an impairment of goodwill or some other intangible, protectable interest. *Cf. Cherne*, 278 N.W.2d at 94 (affirming injunction against use of confidential information); *Chesney v. Hypertension Diagnostics, Inc.*, No. A05-2210, 2006 WL 2256590, at *6 (Minn. Ct. App. Aug. 8, 2006) (affirming injunction against use of the plaintiffs' names in corporate communications where such use threatened fundamental harm to the plaintiffs' reputations). Nothing in the settlement agreement prevents Kellermann from competing with Hinz for the same customers or in the same territory, and Hinz himself argues that Kellermann is free to use other, equally effective ingredients. If that is the case, there is no basis to infer that Hinz will suffer irreparable harm in the absence of an injunction. Without any showing of irreparable harm, Hinz's motion for an injunction must be denied.

### C.  Attorney's Fees and Costs

Hinz moves for attorney's fees and costs under ¶ 2 of the settlement agreement, which states as follows:

> To the extent it becomes necessary for [Hinz], or any entity substantially owned or controlled by [Hinz], to seek Court enforcement of this provision of the Agreement, and [Hinz] prevails, [Kellermann] agrees to pay all attorneys fees and all costs necessarily incurred by [Hinz] in enforcing this provision[.]

Cefalu Aff. Ex. A at 4, Oct. 25, 2006. The "provision of the Agreement" to which this language refers is the section in which Kellermann agreed to permanently discontinue the promotion, sale,

and use of certain specified trade names, trademarks, and products, including, as the jury found, any products containing mucuna pruriens.

Although this case originally involved multiple claims and counterclaims, the only claim that went to trial was Hinz's claim that Kellermann breached the settlement agreement by selling products containing mucuna pruriens. As Kellermann concedes, the settlement agreement grants Hinz the right to recover all fees and costs "necessarily incurred" in prosecuting that claim. *See Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 87 (Minn. 2004) (recovery of attorney's fees must be based either on a statute or a contract). The settlement agreement also requires, however, that Hinz *prevail* before he can recover his fees and costs. In light of the pendency of Kellermann's motion for judgment as a matter of law, the Court asked the parties to brief the issue of whether Hinz would be entitled to recover fees and costs even if he did not recover any damages.

Having considered the parties' arguments, the Court reluctantly concludes that Hinz is not entitled to recover attorney's fees and costs under the settlement agreement. As explained above, Hinz has failed to provide sufficient evidence to support an award of damages or the entry of a permanent injunction. Hinz's failure to prove that he is entitled to damages means that his breach-of-contract claim fails as a matter of law. *See Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578-79 (Minn. Ct. App. 2004) ("A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." )

The only manner in which Hinz can be said to have prevailed is that he obtained a jury finding interpreting the settlement agreement in his favor. But Hinz did not seek declaratory relief defining the meaning of the settlement agreement; he sought damages, which he did not

-16-

recover. While Hinz argues that, at a minimum, he can now take advantage of the preclusive effect of the jury's finding of liability, that is not at all clear. To be given preclusive effect in later litigation, a finding must have been "necessary and essential to the resulting judgment." *See Conwed Corp. v. Union Carbide Corp.*, 443 F.3d 1032, 1038 (8th Cir. 2006) (applying Minnesota law). Because a failure to prove damages defeats Hinz's claim as a matter of law, *see Jensen*, 688 N.W.2d at 578-79, the judgment in this case will provide that Hinz take nothing. The jury's finding of liability cannot be said to be necessary and essential to such a judgment.

To argue otherwise, Hinz points to a quote from a concurrence in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), in which Justice Scalia said: "['Prevailing party'] has traditionally — and to my knowledge, prior to enactment of the first of the statutes at issue here, *invariably* — meant the party that wins the suit or obtains a finding (or an admission) of liability." *Id.* at 616. Hinz contends that he has "obtain[ed] a finding of liability" and therefore has prevailed.

But Justice Scalia wrote this in the context of rejecting the "catalyst" theory for recovery of attorney's fees in civil-rights cases — the theory that, if the plaintiff's lawsuit prompts the defendant to voluntarily cease its allegedly illegal conduct, the plaintiff ought to recover attorney's fees. Justice Scalia was not distinguishing between liability and damages. On that subject, the Supreme Court has said that, when a plaintiff recovers only nominal damages, a reasonable attorney's fee will normally be no fee at all. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992). Similarly, the Supreme Court has held that an appellate court's finding of a constitutional violation did not entitle a plaintiff to recover fees when the plaintiff failed to take the steps necessary to obtain a declaratory judgment, or any other relief, from the district court.

*See Hewitt v. Helms*, 482 U.S. 755, 760 (1987). As the *Hewiit* Court aptly stated, "Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* Here, Hinz has not obtained any relief on the merits of his claim. The Court therefore concludes that Hinz has not "prevail[ed]" within the meaning of the settlement agreement, and his motion for attorney's fees is therefore denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motions for judgment as a matter of law, or, in the alternative, a new trial [Docket No. 411] are GRANTED in part and DENIED in part as follows:

    a. The motion for judgment as a matter of law is GRANTED with respect to the issue of damages.

    b. The motions are DENIED in all other respects.

2. Defendants' motion to stay the judgment [Docket No. 413] is DENIED as moot.

3. Plaintiffs' motion [Docket No. 420] is DENIED to the extent that it seeks a permanent injunction and DENIED as moot to the extent it seeks pre- and post-judgment interest.

4. Defendants' motion to stay permanent injunction [Docket No. 434] is DENIED as moot.

5. Defendants' motion to extend time to file notice of appeal [Docket No. 443] is DENIED as moot.

6. Plaintiffs' motion for attorney's fees and costs [Docket No. 459] is DENIED.

7.  The judgment entered on October 11, 2006 [Docket No. 395] is VACATED, and a new judgment shall be entered as follows:  Plaintiffs shall take nothing from defendants.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May  31 , 2007                    s/Patrick J. Schiltz
                                          Patrick J. Schiltz
                                          United States District Judge